HOTZEL, Respondent, vs. SIMMONS and others, Appellants.

*December 6, 1950—January 9, 1951.*

For the appellants there were briefs by *Bender, Trump & McIntyre,* attorneys, and *Rodger S. Trump* and *Edgar H. Schmiel* of counsel, all of Milwaukee, and oral argument by *Rodger S. Trump.*

*N. B. Langill* of Marinette, for the respondent.

Martin, J.  The following are the pertinent facts: On Sunday, October 26, 1947, plaintiff purchased from defendant Railroad Company at its station at Crivitz, Wisconsin, a ticket entitling him to passage to Iron Mountain, Michigan. At about 6 p.m. he boarded one of defendant's trains. Plaintiff's ticket was taken up in the smoking car of the train by conductor Schmitz, one of defendants. Plaintiff inquired of Schmitz as to the availability of food on the train and was directed to the dining car. Plaintiff went to the dining car and ordered and consumed two bottles of beer for which he paid. He then ordered some food. Food was served him for which he did not pay. There is a dispute as to the reason for his refusal to pay. The dining-car steward followed him to

the smoking car and requested payment for the food. An argument followed in the course of which plaintiff struck the steward. The steward called the conductor who arrested plaintiff and placed him in a coach vestibule.

Pembine, at which station the train usually stopped and the first such station reached after the arrest, was the last scheduled stop of the train in Wisconsin and also the last such stop before Iron Mountain. The train stopped at Pembine but plaintiff was not put off there. He was carried on to Iron Mountain. The distance from Pembine to Iron Mountain is about fourteen miles and the time consumed in traversing that distance was from fifteen to twenty minutes.

Upon the arrival of the train at Iron Mountain the conductor called the Iron Mountain police, delivered plaintiff to them, and told them that he had assaulted the steward. Plaintiff was confined in the Iron Mountain jail overnight and on the next morning was brought before the municipal court of that city, pleaded guilty to a charge of assault and battery, and upon the plea of guilty was convicted. Sentence was suspended on condition that he pay the costs. He paid them and was released.

The action was tried to the court and a jury. The jury found that plaintiff was placed under arrest before the train stopped at Pembine, and assessed compensatory damages for his detention from Pembine to Iron Mountain at $500; that the conductor caused the arrest and imprisonment of plaintiff by the Iron Mountain police, and assessed compensatory damages for the arrest and imprisonment at Iron Mountain at $2,500. No punitory damages were found.

It is obvious that the court considered that the original arrest was lawful, for the jury was not required to make an award of damages for plaintiff's detention prior to the arrival of the train at Pembine. In effect the plaintiff concedes that this is true; he made no request for insertion in the special verdict of any question bearing upon that phase of the event.

For that reason we are to consider only whether there was an invasion of plaintiff's rights in the conductor's failure to put him off the train at Pembine, and by his detention at Iron Mountain.

There is discussion in the briefs as to whether sec. 192.17 or sec. 351.55, Stats., is applicable. We need not determine that question. Each provides that in case of misconduct of a passenger the conductor may put him off the train at some "usual stopping place." In the view which we take of the case we need not be concerned with the question whether there was full compliance by the conductor with the provisions of sec. 351.55.

Plaintiff was not put off the train at Pembine, a station within the meaning of the term "some usual stopping place." Plaintiff contends that we must construe the term as though requiring the Railroad Company to put an offending passenger off the train at its first usual stopping place, in this case, Pembine. We do not so construe the statute. By use of the word "some," the legislature granted to a conductor some discretion in his choice of the place of ejection, a discretion to be exercised reasonably under the circumstances.

Considering a statute authorizing a conductor to eject a passenger in a state of intoxication "at any station" the Iowa court said:

"Nor is a conductor in ejecting such passenger bound to select any particular station at which to do so. The statute in the plainest possible terms authorizes this to be done 'at any station.' Of course, this will not justify the use of excessive force in accomplishing what may be done, nor does such a statute afford any protection against the wilful or wanton conduct of a conductor in ejecting a person even at a station." *Adams v. Chicago Great Western R. Co.* (1912), 156 Iowa, 31, 34, 135 N. W. 21.

We consider for the purpose of treatment of the question here under consideration that the expression contained in our

statute "at some usual stopping place" is synonymous with that used in the Iowa statute "at any station."

There is good reason for permitting a conductor to select the place of ejection. The absence of a police officer or the lack of facilities to hold the passenger in reasonable comfort at the first stopping place; the possible necessity for holding a train at that place to permit the conductor to turn the passenger over and thereby causing delay in the transportation of the other passengers—these or other circumstances might afford sufficient reason for carrying him beyond.

In the exercise of such discretion the conductor must act reasonably. Whether it is so exercised depends on the circumstances of each particular case. Having determined that the choice of the place of ejection lies with the conductor, it follows that to permit recovery plaintiff must establish that in making such choice the conductor did not act reasonably under the circumstances. With respect to the burden of proof to establish the reasonableness or unreasonableness of the choice there is applicable the rule applied in negligence cases:

"Where one generally has a right to do an act, in order to predicate negligence upon the doing of it in a particular instance, the burden is upon one injured thereby to show such facts and circumstances as rendered the doing of it in such instance negligent." 38 Am. Jur., Negligence, p. 976, sec. 285.

Thus the burden of establishing an unreasonable exercise of the discretion was upon plaintiff. The record is barren of any testimony which might bear upon the question of the reasonableness of the choice of the place of ejection except that of the conductor to the effect that Pembine is a railroad junction where operators serve twenty-four hours per day, that it is a "not too busy" passenger station, and that when the train stopped there were some people around the station. The plaintiff failed to offer any testimony from which it might be inferred that the conductor acted unreasonably in

carrying him beyond that station, and thus failed to establish any liability on that account.

Recovery was allowed upon the finding of the jury that the conductor caused the arrest and imprisonment of the plaintiff by the Iron Mountain police at that place. The conductor testified that when the train arrived at Iron Mountain he turned plaintiff over to the police and told them to charge plaintiff with assault and battery and refusal to pay his food bill, that he gave the police no written statement of what had happened, and that he did not tell them where the offenses had been committed.

It is elementary that a court may act only upon crimes committed within the territorial jurisdiction of the sovereignty seeking to try the offense. Plaintiff's offenses were committed in Wisconsin. His assault upon the steward and his refusal to pay his bill were completed in Wisconsin and were not acts which can be said to have continued until Iron Mountain was reached. There was no showing of a disposition on his part to renew or continue his violence into the state of Michigan, that the public peace was likely to be disturbed by any act of his in Michigan, or that he was so intoxicated as to warrant a presumption that his condition continuing into Michigan would disturb anyone there. Those circumstances, or some of them, existed in the cases cited by appellants in support of their contention that the detention in Michigan was lawful, and distinguished them from the instant case. There was no authority for his detention, his trial, or his conviction in Michigan.

Nothing except the conductor's direction to the Iron Mountain officers prompted or caused the detention at that place. His direction made him a party to the proceedings in Michigan and renders him liable therefor.

"All those who, by direct act or indirect procurement, personally participate in, or proximately cause, the false imprisonment or unlawful detention are liable therefor. It is a

postulate of this article and a tacit assumption of the cases throughout that the person effecting the actual imprisonment is liable for his wrongdoing." 22 Am. Jur., False Imprisonment, p. 371, sec. 31.

"Persons other than those who actually effect an imprisonment may be so related to the act or proceeding as instigators or participants therein as to be jointly liable; for all who aid, direct, advise, or encourage the unlawful detention of a person are liable for the consequences." 22 Am. Jur., False Imprisonment, p. 372, sec. 32.

The defendant Railroad Company is liable under the rule of *respondeat superior*.

"It is well settled that a common carrier of passengers is liable for the wrongful arrest, detention, or false imprisonment of a passenger by it employees, where the latter are acting within the general line of their duty and the scope of their authority." 10 Am. Jur., Carriers, p. 340, sec. 1590.

In *Karney v. Boyd* (1925), 186 Wis. 594, 596, 203 N. W. 371, it was held that where a chief of police had ratified the act of his subordinates in effecting an unlawful arrest he was responsible to the plaintiff in an action for false imprisonment. It follows that if ratification of an unlawful arrest and detention permits recovery for false imprisonment, causing such act must have the same result.

Defendants contend that plaintiff's plea of guilty in the Iron Mountain court furnishes a bar to his right of recovery. There are two answers to this contention: (1) The Iron Mountain court having been without jurisdiction to act in the matter, all proceedings in that court are a nullity; and (2) civil liability for an illegal arrest is not waived by pleading guilty to the charge upon which the arrest was made. 22 Am. Jur., False Imprisonment, p. 417, sec. 94; 35 C.J.S., False Imprisonment, p. 575, sec. 46.

Finally, defendants contend that the damages found by the jury are so excessive as to require a new trial. We have disposed of the award for plaintiff's detention from Pembine

to Iron Mountain and therefore are to consider only the award for his arrest and imprisonment at the latter place. He was detained there from about 6:30 on Sunday evening until about nine o'clock the next morning. He was not subjected to any physical discomfort except that which attends confinement in jail; he was humiliated by the fact that he had been arrested and imprisoned—his first experience—and the story "got around little by little and some of the boys started teasing me about it." He does not claim that he lost any time from work or opportunity for employment or that he was otherwise publicly humiliated. For his detention at Iron Mountain he was awarded $2,500 compensatory damages; no punitory damages were allowed.

In view of the fact that plaintiff's actions were responsible for his arrest, the arrest in the first instance was valid. Any suffering or humiliation was caused by his own actions. Had he been imprisoned in Pembine, Wisconsin, instead of Iron Mountain, Michigan, he would have no cause for complaint. We are of the opinion that the amount to be accepted as compensatory damages, assessed by the jury at $2,500 and undisturbed by the trial court, should have been as low as $500, that being the lowest amount a jury would probably assess, giving due credit to the claims of embarrassment and humiliation of the plaintiff. Therefore the plaintiff is to have the option of taking judgment for the compensatory damages, determined by this court to be $500, this being the lowest amount which a jury properly instructed might decide upon. *Asplund v. Palmer* (1950), ante, p. 34, 44 N. W. (2d) 624.

The judgment of the circuit court (including compensatory damages for plaintiff's detention from Pembine to Iron Mountain at $500) is therefore reversed, and the case is remanded for a new trial unless plaintiff within twenty days after filing of the remittitur in the court below serves upon defendants' counsel consent in writing to acceptance of judgment in his favor for the $500 compensatory damages for

arrest and imprisonment at Iron Mountain here determined upon. Judgment may be rendered upon application to the court having jurisdiction of the action.

*By the Court.*—It is so ordered. Defendants to have costs on this appeal.